ITALIA DI NAVIGAZIONE,
S.p.A., Appellant,

v.

M.V. HERMES I, her engines, boilers, tackle, etc. and Hermes Shipping K.K., a/k/a Hermes Shipping Co., Ltd., Appellees.

No. 321, Docket 83–7564.

United States Court of Appeals, Second Circuit.

Argued Nov. 17, 1983.

Decided Dec. 13, 1983.

Elisa M. Pugliese, Healy & Baillie, New York City (Raymond A. Connell, Healy & Baillie, New York City, of counsel), for appellant.

Christopher H. Mansuy, Walker & Corsa, New York City, for appellee.

Before OAKES and MESKILL, Circuit Judges, and NEAHER, District Judge.*

PER CURIAM:

Italia Di Navigazione, S.p.A. ("Italian Line"), instituted this action for damages on February 26, 1982, alleging four incidents of nondelivery of goods shipped aboard the M.V. Hermes I, owned by Hermes Shipping K.K. ("Hermes"). The incidents arose out of three voyages: one in October, 1980, one in January, 1981, and one in February, 1981. The United States District Court for the Southern District of New York, Robert W. Sweet, Judge, grant-

* Of the Eastern District of New York, sitting by    designation.

ed Hermes' motion for summary judgment with respect to the claims arising out of the first two voyages, on the ground that they were time-barred by the one-year statute of limitations in the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1303(6) (1976). Italian Line acknowledges that these claims were filed late, but argues that COGSA's statute of limitations should not be applied where there are "good faith allegations of systematic theft on the part of the officers and crew of the carrier." We affirm the district court, 564 F.Supp. 492.

Italian Line urges that the "doctrine of deviation" should be applied to this case. Traditionally, this doctrine has been applied to deprive the carrier of the benefit of contractual limitations on liability for damage to shipped goods when the carrier has deviated substantially from the terms of the contract. Originally, the doctrine covered only cases of geographic deviation. *See, e.g., S.S. Willdomino v. Citrochemical Co.,* 272 U.S. 718, 727, 47 S.Ct. 261, 262, 71 L.Ed. 491 (1927); G. Gilmore & C. Black, *The Law of Admiralty,* 176–183 (2d ed. 1975). Although more recently certain cases have extended the doctrine's applicability in situations not involving geographic deviations even after COGSA, *e.g., Jones v. The Flying Clipper,* 116 F.Supp. 386, 387–88 (S.D.N.Y.1953) (cargo on deck), there is good precedent as well as good reason for refusing to extend the doctrine to void COGSA's statute of limitations for nondelivery of goods. This court refused to extend the doctrine to cover an unseaworthy vessel even on the assumption that the owner was on notice of the defect. *Iligan Integrated Steel Mills, Inc. v. S.S. John Weyerhauser,* 507 F.2d 68, 71–72 (2d Cir.1974) (alternative ground for decision), *cert. denied,* 421 U.S. 965, 95 S.Ct. 1954, 44 L.Ed.2d 452 (1975). In *Hellyer v. Nippon Yesen Kaisya,* Judge Weinfeld held that "non-delivery of the cargo, notwithstanding that the vessel in fact arrived at the port of her destination[ ] ... is not the type of deviation, if deviation it be, which voids the one-year limitation provision" of COGSA. 130 F.Supp. 209, 210 (S.D.N.Y.1955). The only apparent difference between the facts

of *Hellyer* and those of the present case is that this appellant hypothesized "systematic theft" as the explanation for the appellees' nondelivery. Given that the appellant has not connected that claim in any way to its failure to meet the limitations period, this difference is of no consequence.

Moreover, consideration of the policy underlying the deviation doctrine strongly suggests that it should not be extended to this case. As Judge Weinfeld noted in an earlier case, "a fundamental reason for the rule" is that

[a] shipper has the right to assume that the carrier will not deviate and thereby subject the cargo to other than the known risks inherent in a normal route or underdeck stowage. The shipper protects himself by insurance commensurate with such calculated risks. But when the carrier deviates and enters upon "a different venture from that contemplated", he exposes the cargo to unanticipated and additional risks against which he has not protected himself. The shipper, in effect, has been lulled into a false sense of security by the carrier's actions.

*The Flying Clipper,* 116 F.Supp. at 389 (footnotes omitted). Here, even if we were to assume that systematic theft occurred on the vessel and that this unforeseeably increased the risk to the appellant, there is no relationship between the statute of limitations that the appellant wants displaced and the unknown risks to the appellant. The appellant has not alleged that the theft was not detected or detectable within the limitations period. Thus, whatever effect systematic theft might have in terms of COGSA's $500/package limitation on liability, for example, it does not present a reason for ignoring the statute of limitations.

Judge Friendly not long ago expressed the view that allowing even geographical deviations to avoid limitations on the carrier's liability "seems inconsistent with the language of COGSA." As a result, he urged that "the principle of 'quasi-deviation' is not one to be extended." *Iligan,* 507 F.2d at 72. Gilmore and Black agree: "It

would seem unwise to extend analogically and by way of metaphor a doctrine of doubtful justice under modern conditions, of questionable status under COGSA, and of highly penal effect." *The Law of Admiralty* 183 (2d ed. 1975). These misgivings are well taken, and this case is certainly not a compelling one for extending the doctrine of deviation any further.

Judgment affirmed.