558 F.2d 1113
 LOCAFRANCE U. S. CORPORATION, Plaintiff-Appellant,
v.
INTERMODAL SYSTEMS LEASING, INC., Daniel H. Overmyer,
Shirley Overmyer, John Overmyer, Elizabeth Overmyer, Edward
Overmyer, Barbara Strang and "John Doe," that name being
fictitious, the true name of the defendant being unknown to
plaintiff and the person intended being trustee f/t/b of
defendants John Overmyer, Elizabeth Overmyer, Edward
Overmyer and Barbara Strang, Defendants-Appellees.
 No. 940, Docket 76-7612.
 United States Court of Appeals,
Second Circuit.
 Argued April 28, 1977.
Decided July 21, 1977.
 
 Jan D. Atlas, New York City (Robert Aronson, John J. Conway, III, Regan, Goldfarb, Heller, Wetzler & Quinn, New York City, of counsel), for plaintiff-appellant.
 Irwin M. Echtman, New York City (Easton & Echtman, P. C., New York City, of counsel), for defendants-appellees.
 Before SMITH, OAKES and MESKILL, Circuit Judges.
 OAKES, Circuit Judge.
 
 
 1
 This appeal is from a grant of summary judgment entered in the United States District Court for the Southern District of New York, Charles L. Brieant, Jr., Judge. The judgment against appellant applied to all of the defendants and to all of the federal securities law and state statutory and common law violations alleged in the complaint. The basis for the judgment was that appellant, as part of a settlement agreement arising out of a lawsuit brought in Illinois state court by defendant Intermodal Systems Leasing, Inc. (Intermodal), had executed a general release in favor of Intermodal with regard to any and all claims appellant might have had against Intermodal to the date of the release.
 
 
 2
 Appellant presents several arguments concerning the nature and effect of the release. We cannot agree that issues of fact were presented or that parol evidence would have been useful as to the interrelationship between the release and the contemporaneous settlement agreement or as to the intent of the parties, at least insofar as Intermodal is concerned. The release, quoted in relevant part in the margin,[1] is unambiguous. While it refers to the June 18, 1974, settlement agreement, it plainly does not require that the agreement be performed before the release becomes effective, as appellant now contends.[2] Questions regarding the intent of the parties may occasionally arise even when a release is unambiguous on its face, see, e. g., Fournier v. Canadian Pacific Railroad, 512 F.2d 317 (2d Cir. 1975) (per curiam), but courts generally examine such questions only in the context of personal injury or similar actions, see Dury v. Dunadee, 52 App.Div.2d 206, 208-09, 383 N.Y.S.2d 748, 750 (1976) ("releases which arise out of personal injury accidents . . . are subject to highly specialized rules of interpretation"), where mistake, fraud, or overreaching against an individual is suspected, see Fournier v. Canadian Pacific Railroad, supra, 512 F.2d at 318. When, as here, a release is signed in a commercial context by parties in a roughly equivalent bargaining position and with ready access to counsel, the general rule is that, if "the language of the release is clear, . . . the intent of the parties (is) indicated by the language employed." German Roman Catholic Orphan Home v. Liberty National Bank & Trust Co. (In re Schaefer),18 N.Y.2d 314, 317, 221 N.E.2d 538, 540, 274 N.Y.S.2d 869, 872 (1966); cf. D. H. Overmyer Co. v. Frick Co., 405 U.S. 174, 186-87, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972) (distinguishing, for procedural due process purposes, between contracts signed by sophisticated corporate parties and those in which individuals have "unequal bargaining power" or may be subject to "overreaching"). Thus we conclude that the court below correctly construed the release as to Intermodal, and we affirm the grant of summary judgment in favor of Intermodal.
 
 
 3
 With regard to the other defendants, however, we must remand for further findings. In the release on which the court below predicated its ruling, appellant discharged only Intermodal, its successors and assigns, from liability, yet the court, without explanation, granted summary judgment as to all defendants on all causes of action. The court apparently assumed that a release of one joint tortfeasor necessarily releases all. This was the common law rule, but it has been strongly criticized as "formalistic," Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 343, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), and unnecessarily harsh, 1 F. Harper & F. James, The Law of Torts § 10.1, at 711-14 (1956); W. Prosser, Handbook of the Law of Torts § 49, at 301-05 (4th ed. 1972), and consequently has been modified in many jurisdictions, see. e. g., N.Y.Gen.Oblig.Law § 15-108(a) (McKinney Cum.Supp.1976-77); see Restatement (Second) of Torts § 885, comments a-d (Tent. Draft No. 16, 1970). As to appellant's federal securities law claims, it is plainly not the rule.
 
 
 4
 It is well established that federal law governs all questions relating to the validity of and defenses to purported releases of federal statutory causes of action. Dice v. Akron, Canton & Youngstown Railroad,342 U.S. 359, 361-62, 72 S.Ct. 312, 96 L.Ed. 398 (1952) (FELA case).[3] In particular, federal law governs whether a release of one joint tortfeasor releases all for purposes of federal securities law claims. Stella v. Kaiser,221 F.2d 115, 116 (2d Cir.) (L. Hand and Frank, JJ.), cert. denied, 350 U.S. 835, 76 S.Ct. 71, 100 L.Ed. 745 (1955). The federal rule with regard to such claims is equally well established: a release of one joint tortfeasor or coconspirator is not a release of others unless the party signing the release intended the others to be released. Stella v. Kaiser, supra, citing McKenna v. Austin, 77 U.S.App.D.C. 228, 134 F.2d 659, 665 (1943) (Rutledge, J.); Ruskay v. Jensen, 342 F.Supp. 264, 271 (S.D.N.Y.1972); see Zenith Radio Corp. v. Hazeltine Research, Inc., supra, 401 U.S. at 343-47, 91 S.Ct. 795 (same rule, anti-trust laws); Aro Manufacturing Co. v. Convertible Top Replacement Co., 377 U.S. 476, 500-01, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964) (same rule, patent laws).[4] Accordingly, on remand the district court should determine whether appellant intended, in expressly releasing defendant Intermodal, to release as well the other persons that it now seeks to sue under the federal securities laws.
 
 
 5
 If the district court determines that the other defendants were intended to be released, it should dismiss appellant's federal securities law claims with prejudice as barred by the release. Because appellant's state law and common law claims are in federal court only under the doctrine of pendent jurisdiction, and because the case is currently at an early, pretrial stage, those claims should then be dismissed on jurisdictional grounds. See United Mine Workers v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). If, on the other hand, the district court determines, as to the federal statutory causes of action, that under federal law there was no intent to release the other defendants and that those claims are therefore properly asserted, the court would have to go on to determine which state's law governs releases as to appellant's state statutory and common law causes of action.[5] We need not reach that question here.[6]
 
 
 6
 Judgment affirmed as to Intermodal. Cause remanded for determination of appellant's intent in signing release and for such other action as is deemed appropriate.
 
 
 
 [1]
 The release was a general one running to Intermodal from plaintiff-appellant. The release specifically provided:
 The effectiveness of this release is dependent upon an agreement dated the 18(th) day of June, 1974 between Intermodal Systems Leasing, Inc. and Locafrance U.S. Corporation becoming effective in accordance with its terms. The terms, conditions, covenants and agreements contained in said agreement are specifically excluded from this release, as are the terms, conditions, covenants and agreements contained in Lease No. 057/82/000 /0 between Locafrance U.S. Corporation, lessor, and Intermodal Systems Leasing, Inc., lessee.
 This release may not be changed orally.
 
 
 [2]
 Appellant argues that, if the release is not construed as conditioned on performance of the settlement agreement of June 18, the language in the release regarding its "effectiveness" being "dependent" on the agreement's "becoming effective in accordance with its terms," see note 1 supra, would be superfluous, since the agreement was signed contemporaneously with the release. The June 18 agreement, however, contained a provision that rendered the release "of no force and effect" if appellant and Intermodal did not reach agreement as to certain collateral matters within a short period after the signing of the release and settlement agreement. Since the settlement agreement thus did not become fully effective until the collateral agreement was reached, the language in the release about the settlement agreement "becoming effective," far from being superfluous, was necessary to accomplish the intention of the parties for reasons quite unrelated to ultimate performance of the settlement agreement. The collateral agreement was later reached
 
 
 [3]
 We must therefore reject appellant's suggestion that New York law applies because, in the settlement agreement between Locafrance and Intermodal, the parties agreed to construe the agreement in accordance with New York law. Federal statutory rights could be easily defeated if state law could be used to control the incidents of those rights and the defenses to them. Dice v. Akron, C. & Y. R. R., 342 U.S. 359, 361, 72 S.Ct. 312, 96 L.Ed. 398 (1952). We disapprove the case of Alexander & Baldwin, Inc. v. Peat, Marwick, Mitchell & Co., 385 F.Supp. 230, 239 (S.D.N.Y.1974), to the extent that the court there looked to state law in such a situation. While not dispositive, however, such a forum selection clause may be used, along with any other evidence, to shed light on the intent of the releasor under the federal standard for determining whether a release of some tortfeasors releases all, as discussed infra
 
 
 [4]
 Whether this rule applies to all federal statutory causes of action is said to be still unsettled. See Wiederhold v. Elgin, Joliet & E. Ry., 368 F.Supp. 1054, 1056-60 (N.D.Ind.1974)
 
 
 [5]
 The survival of appellant's state statutory and common law claims may ultimately depend on which state's law is held to apply, as both Illinois and New York have contacts with this litigation. In Illinois, it appears "well established that the release of one joint tortfeasor acts as a release of all joint tortfeasors." Sears, Sucsy & Co. v. Insurance Co. of North America, 396 F.Supp. 820, 821 (N.D.Ill.1975). New York in 1972 abolished this common law rule by a statute providing that a release of one joint tortfeasor does not discharge the others unless the release's "terms expressly so provide." N.Y.Gen.Oblig.Law § 15-108(a) (McKinney Cum.Supp.1976-77). The release here contains no express discharge of the defendants other than Intermodal. See generally Restatement (Second) of Conflict of Laws § 170 (1971)
 
 
 [6]
 The court may also have to consider such other defenses as accord and satisfaction, in light of the prior settlement between appellant and Intermodal. It should further consider whether the unreleased tortfeasors are entitled to a credit for the amount of the prior settlement agreement, to the extent that the prior settlement involved the injuries that are the subject of this lawsuit. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 348, 91 S.Ct. 795, 28 L.Ed.2d 77 (1970). We of course intimate no opinion on the substantiality of these potential defenses