**CARIBBEAN STEAMSHIP COMPANY, S. A., Petitioner-Appellee,**

v.

**SONMEZ DENIZCILIK VE TICARET A. S., Respondent-Appellant.**

No. 630, Docket 78–7501.

United States Court of Appeals, Second Circuit.

Argued Feb. 26, 1979.

Decided May 17, 1979.

William F. Losquadro, New York City (Allan A. Baillie, Healy & Baillie, New York City, of counsel), for respondent-appellant.

Louis G. Juliano, New York City (Donald M. Waesche, Jr., Bigham Englar Jones & Houston, New York City, of counsel), for petitioner-appellee.

Before FEINBERG, TIMBERS and MES-KILL, Circuit Judges.

FEINBERG, Circuit Judge:

In this unusual case, Sonmez Denizcilik Ve Ticaret A.S., a Turkish corporation, and owner of the vessel M/V Zeki, appeals from an order of the United States District Court for the Southern District of New York, Constance Baker Motley, J., compelling appellant to arbitrate a dispute with appellee Caribbean Steamship Company, S.A., a Panamanian corporation. For reasons set forth below, we affirm the judgment of the district court.

I

In October 1976, appellee Caribbean entered into a charter party with appellant shipowner for the transportation of a cargo of alumina ore aboard the M/V Zeki. The cargo was loaded on the ship in Germany in October 1976 but the vessel sank in the Atlantic Ocean on November 7. Although the crew was saved, there was a total loss of the almost $2¾ million worth of cargo. The claim that appellee, the charterer, seeks to press in arbitration relates to the cargo loss caused by that unfortunate event.

At the time of the sinking, the cargo was owned by Reynolds Metals Company, the parent company of appellee charterer. After Reynolds recovered for the loss from its insurer, the Insurance Company of North America, a petition in the cargo owner's name was filed in the United States District Court for the Southern District of New York to compel the shipowner to arbitrate the cargo owner's claim regarding the loss. Reynolds, as cargo owner, apparently relied on the standard New York Produce Exchange Arbitration Clause in the charter party between the shipowner and the charterer, which provided:

28. Should any dispute arise between Owners and Charterers, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto and the third by the two so chosen; their decision or that of any two of them shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The arbitrators shall be commercial men.

The cargo owner's petition was assigned to Judge Charles L. Brieant, Jr., who refused to compel arbitration. In a memorandum opinion, the judge held that because the cargo owner, Reynolds Metals Company, was not a party to the charter party, and because Reynolds could not "pierce its own subsidiary's corporate veil," Reynolds's claim was "not a dispute between [ship]owner and charterer . . . which ¶ 28 of the charter party compels respondent [shipowner] to arbitrate." No appeal was taken from that decision.

The insurer, which was subrogated to the cargo owner's rights, then executed two related documents styled "Assignment with Covenant Not To Sue" and "Covenant." For a purported good and valuable consideration, the insurer "assigned" all of its claims against the shipowner to Caribbean, the charterer, and covenanted not to sue the charterer. The "assignment," however, was primarily not a grant of rights, but rather imposed an obligation on the charterer to assert the "assigned" claim for the insurer's account. The document, after divesting the insurer of the right to present the cargo loss claim itself, reads as follows:

Caribbean Steamship Company S.A. agrees to present and prosecute any and all claims to which it has been assigned hereunder by any and all legal proceedings to which it may be entitled, including but not limited to arbitration. The expense of such proceedings, including the costs of arbitration, shall be solely at the expense of the assignor [the insurer]. Caribbean further agrees that any recoveries that it may effect for the loss of the cargo by suit, arbitration proceedings or settlement will be for the account of the assignor.

Pursuant to these documents, appellee Caribbean filed a petition to compel the shipowner to arbitrate the cargo loss in the United States District Court for the Southern District of New York. Judge Motley, in a memorandum opinion, found

that there was an agreement to arbitrate between these two parties, that the respondent has refused to arbitrate and that petitioner's claim on its face is an arbitrable claim.

The judge thus granted the petition to compel arbitration. On this appeal, the shipowner challenges the finding that there is an arbitrable claim.

## II

■ In the absence of a clear demonstration that the parties intended to confer on the arbitrator the power to decide which disputes are within the "any dispute" language of the arbitration clause, it is the court's duty to decide that issue. See, e. g., *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–47, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 583 n.7, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Necchi v. Necchi Sewing Machine Sales Corp.*, 348 F.2d 693, 696 (2d Cir. 1965), cert. denied, 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966). The arbitration clause in this case, while quite broad, does not expressly vest the arbitrator with the power to determine arbitrability. We therefore now turn to that determination.

It is difficult to imagine broader general language than that contained in the charter party's arbitration clause, "any dispute . . . between Owners and Charterers." See, e. g., *In re Canadian Gulf Line*, 98 F.2d 711 (2d Cir. 1938), broadly construing this language. Appellant shipowner argues, however, that the charterer's claim is non-arbitrable because an assigned subrogated claim comes to the assignee with all the rights and disabilities that the original owner of the claim had. See, e. g., *United States v. Munsey Trust Co.*, 332 U.S. 234, 242, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947); *International Ribbon Mills, Ltd. v. Arjan Ribbon, Inc.*, 36 N.Y.2d 121, 365 N.Y.S.2d 808, 811, 325 N.E.2d 137 (1975). Since Judge Brieant has already ruled that the claim of Reynolds Metals Company was non-arbitrable, the shipowner argues that after acquiring the same claim by subrogation and assignment, the charterer cannot compel the shipowner to submit it to arbitration.

Although appellant's argument is somewhat persuasive at first blush,[1] we do not find it dispositive. We construe the "Assignment with Covenant Not To Sue" and "Covenant" as giving rise to two alternative methods by which the charterer could assert a claim against the shipowner. First, the charterer could sue in admiralty court for the full value of the cargo owner's (or the subrogee's) claim against the shipowner. Second, the charterer could force the shipowner to arbitrate, as was done here, but subject to potentially significant limitations as follows.

■ The cargo owner's claim has already been held to be non-arbitrable by Judge Brieant. And we agree with appellant when it argues that an assignee of a claim takes it with whatever limitations it had in the hands of the assignor. In this case, that means that the charterer cannot force the shipowner to arbitrate the cargo owner's claim against the shipowner. One cannot make an arbitrable claim out of a non-arbitrable one by assigning it to a per-

1. But see *Star-Kist Foods, Inc. v. Diakan Hope, S.A.*, 423 F.Supp. 1220 (C.D.Cal.1976).

son having a broad "any dispute" arbitration contract with the party against whom the claim lies, at least in the absence of evidence showing that the parties to the arbitration contract intended such a result.

Nonetheless, we hold that a "dispute" within the meaning of the arbitration clause does exist between the charterer and the shipowner as a result of this unusual set of circumstances. While the arrangement between the insurer and the charterer is styled as an assignment, in substance, at least for arbitration purposes, it is really much closer to the situation where there is a suit by the cargo owner against the charterer, which in turn gives rise to a claim for indemnity by the charterer against the shipowner. The variance from that sequence of events here, which is probably due to the corporate relationship of the cargo owner and the charterer, has caused what is, in effect, a claim for indemnity to be somewhat accelerated. From the point of view of the shipowner, the situation is similar to the indemnity situation. In either case the shipowner will be held liable only for so much of the loss as the arbitrators determine is caused by the fault of the shipowner, to the extent that such liability is consistent with the charter party. This is precisely what the shipowner bargained for in the arbitration clause. The shipowner's potential liability is not increased by the manner in which the cargo owner (or its insurer) and the charterer resolve their differences. Since the shipowner apparently concedes that it could be compelled to arbitrate a claim for indemnity of the charterer,[2] we hold it must arbitrate the claim asserted here. If it is true, as the shipowner argues, that the charterer could have asserted defenses in a suit against it by the cargo owner, the shipowner will be able to present such defenses, as well as the shipowner's own defenses, in the arbitration. Cf. *The Toledo*, 122 F.2d 255, 257 (2d Cir.), cert. denied, 314 U.S. 689, 62 S.Ct. 302, 86 L.Ed. 551 (1941) ("[I]f he [the purported indemni-

tee] settles a claim without a determination of the rights in question, he bears the risk of proving an actual liability in the action over for indemnity."). See also *Tankrederiet Gefion A/S v. Hyman Michaels Co.*, 406 F.2d 1039, 1042 (6th Cir. 1969).

Thus, while appellant's argument is far from frivolous, we believe that the district court was correct in granting appellee's petition to arbitrate, particularly in light of the strong policy of resolving doubts in favor of arbitration. *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Federal Commerce & Navigation Co., Ltd. v. Kanematsu-Gosho, Ltd.*, 457 F.2d 387, 390 (2d Cir. 1972); *Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209, 1212 (2d Cir.), cert. denied, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972). We affirm the judgment of the district court.

the charterer's claim for indemnity." (Emphasis in appellant's brief.)

---

**2.** It does so, e. g., while arguing that "this is *not* a case of a charterer, having been held liable to a cargo owner as a carrier, seeking to arbitrate