**ITALIA DI NAVIGAZIONE,
S.p.A., Plaintiff,**

v.

**M.V. HERMES I, her engines, boilers,
tackle, etc., and Hermes Shipping K.K.,
a/k/a Hermes Shipping Co., Ltd., De-
fendants.**

**No. 82 Civ. 1188 (RWS).**

United States District Court,
S.D. New York.

May 21, 1984.

Healy & Baillie, New York City, for
plaintiff; Raymond A. Connell, Elisa M.
Pugliese, New York City, of counsel.

Walker & Corsa, New York City, for
defendants; Leroy S. Corsa, Christopher
H. Mansuy, Lenore E. McQuilling, New
York City, of counsel.

OPINION

SWEET, District Judge.

Once more the dispute between plaintiff
Italia Di Navigazione, S.p.A. ("Italian
Lines") and the M.V. *Hermes* I and Hermes
Shipping K.K., a/k/a Hermes Shipping Co.,
Inc. (collectively "Hermes") is before the
court on pretrial motions. This time
Hermes has moved for leave to file an
amended answer pursuant to Fed.R.Civ.P.
15(a) to assert the affirmative defense of
release and for summary judgment pursu-
ant to Fed.R.Civ.P. 56 on the third and
fourth causes of action, and Italian Lines
has moved to compel discovery. The mo-
tion of Hermes for summary judgment on
the third and fourth causes of action will
be granted, and the motion of Italian Lines
for further discovery on those causes will
be denied.

As set forth in the court's two prior
opinions, dated March 25 and October 6,
1983, 564 F.Supp. 492 and 578 F.Supp. 81,
and the affirmance by the Court of Appeals
of the March 25, 1983 opinion, Italian Lines
time-chartered the *Hermes* pursuant to a
charterparty dated March 14, 1979. Italian
Lines issued bills of lading covering con-
tainers of shoes, leather goods or piece
goods loaded on the *Hermes*. By com-
plaint filed February 26, 1982, as amended
June 4, 1982, Italian Lines, as assignee or
subrogee of various cargo claimants, sued
Hermes for cargo damage and/or loss re-

sulting from the pilferage of containers aboard the *Hermes* from Italy to New York. Italian Lines alleged four incidents of nondelivery of goods shipped aboard the *Hermes* on three voyages in October 1980, January 1981 and February 1981.

The first two causes of action were dismissed as barred by the one year statute of limitations in the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1303(6), despite a claim that the doctrine of deviation tolled the statute because of Italian Lines' allegations of systematic theft by the officers and crew of the ship. The Court of Appeals affirmed the dismissal on December 13, 1983, 724 F.2d 21 (2 Cir.1983).

Hermes also sought a stay of the action pending arbitration pursuant to the charterparty, and Italian Lines successfully resisted claiming that it was suing as assignee of the claims of the cargo owners or their subrogees and therefore was not barred by the broad arbitration clause contained in the charterparty. The court, noting some difficulty with the Court of Appeals' decisions in the area, directed that the action proceed and that discovery continue.

In the course of discovery, Hermes has discovered that the Royal Exchange Assurance Company of America ("Royal"), as subrogee of the consignee Falsway Corporation, upon the payment of $45,700 by the Italian Lines, executed a release dated August 18, 1981 which released Italian Lines and Hermes from all liability under bills of lading Nos. 130, 131 and 132 on voyage #51 which arrived in Jersey City, New Jersey on February 27, 1981. Similarly, on July 31, 1981, the Hartford Insurance Group ("Hartford"), as subrogee of the consignee Ennesi Shoe Co., on receipt of $57,065.70 from Italian Lines, released the Italian Lines and Hermes from all liability under bill of lading No. 123, issued on the same voyage. On February 23, 1982, Royal assigned its claims against Hermes arising out of voyage No. 51 to Italian Lines, and on February 25, 1982 Hartford assigned its claims against Hermes in similar

fashion. The following day this action was initiated.

In support of the instant motion, Hermes urges that there were no causes of action to assign as a result of the releases and that it has been discharged from any liability arising out of the bills of lading issued by Italian Lines. Hermes also argues that there is no privity between itself and Italian Lines as assignee. According to Italian Lines, Hermes was merely a third party beneficiary, and the releases were never delivered to Hermes and therefore were not binding as to Hermes. Italian Lines argues that the releases were subsequently modified by an appropriate writing, namely the assignments. On the privity issue, Italian Lines maintains that Hermes, having taken advantage of the COGSA statute of limitations, cannot avoid COGSA liability now by claiming it is not a COGSA carrier.

Each party, with some justification, accuses the other of advancing inconsistent positions. Authorities from the New York state courts, including an 1816 opinion, and from state courts in Alabama, California, Iowa, Kansas, New Jersey, Oklahoma and Rhode Island have been cited. Each party claims to be following an established path leading to the resolution of this dispute. What neither party has addressed in their papers on the pending motions is what may underlie the respective positions taken, namely, the availability of court directed discovery to establish the facts relating to the alleged theft. Presumably a number of the methods to that end would not be available in the arbitration proceeding and that is at least one of the reasons that Italian Lines has fought so vigorously to remain in federal court. In light of the withheld releases, its final effort is unavailing.

Italian Lines argues that the releases signed by Royal and Hartford did not release Hermes from liability because Hermes did not participate in the negotiations and did not contribute to the settlement. However, the terms of the releases are unambiguous and expressly release Hermes as well as Italian Lines from liability on bills of lading Nos. 123, 130, 131 and

132. "When, as here, a release is signed in a commercial context by parties in a roughly equivalent bargaining position and with ready access to counsel, the general rule is that, if 'the language of the release is clear, ... the intent of the parties [is] indicated by the language employed.'" *Locafrance U.S. Corp. v. Intermodal Systems Leasing, Inc.*, 558 F.2d 1113, 1115 (2d Cir. 1977) (quoting *German Roman Catholic Orphan Home v. Liberty National Bank & Trust Co.*, 18 N.Y.2d 314, 317, 274 N.Y. S.2d 869, 872, 221 N.E.2d 538, 539 (1966)). The releases by their express terms were immediately effective and unconditional, and they were supported by consideration. Italian Lines paid for the termination of any claim which might have disturbed the course of its commerce. Moreover, Italian Lines arguably had a duty under the charterparty to protect Hermes from such cargo claims.

Italian Lines also contends that Hermes is, at best, a third party beneficiary of the releases and that the subsequent assignments by Royal and Hartford to Italian Lines of all claims against Hermes modified the releases. However, there is no indication in either assignment that it was intended as a modification of the prior release. By their terms, the releases could not be modified orally but only by written agreement. "[A]n assignee of a claim takes it with whatever limitations it had in the hands of the assignor." *Caribbean Steamship Co. v. Sonmez Denizcilik Ve Ticaret A.S.*, 598 F.2d 1264, 1266 (2d Cir. 1979). Neither Royal nor Hartford had a claim against Hermes with respect to bills of lading Nos. 123, 130, 131 and 132 after executing the releases in the summer of 1981, and, accordingly, neither could assign such a claim to Italian Lines in February 1982.

In its October 6, 1983 opinion, the court denied Hermes' motion for a stay pending arbitration, noting that a charterer may sue in dual capacities and, in this instance, Italian Lines was suing as assignee of the cargo claims rather than as charterer. In its capacity as charterer, Italian Lines had already commenced arbitration seeking indemnification for the cargo loss. The court concluded that the posture of the parties in this situation was similar to that in *Nissho-Iwai Co. v. M/T STOLT LION*, 617 F.2d 907 (2d Cir.1980) and distinguishable from the facts in *Caribbean Steamship Co. v. Sonmez Denizcilik Ve Ticaret, A.S.*, 598 F.2d 1264 (2d Cir.1979).

In *Nissho-Iwai*, the cargo owner sued both the shipowner and the charterer for cargo damage. The charterer settled with the cargo owner and received an assignment of the cargo owner's claim against the shipowner. The charterer then asserted cross-claims against the shipowner seeking damages as assignee of the cargo claim and indemnity as charterer. The Court of Appeals recognized that the charterer could properly appear and assert these claims in dual capacities. *Nissho-Iwai*, 617 F.2d at 913.

In *Caribbean*, the cargo owner, which was the parent company of the charterer, had filed a petition to compel the shipowner to arbitrate which was dismissed. The insurer, which was subrogated to the cargo owner's rights, then purported to assign its claims against the shipowner to the charterer. The Court of Appeals concluded that the assignment "was primarily not a grant of rights, but rather imposed an obligation on the charterer to assert the 'assigned' claim for the insurer's account." *Caribbean*, 598 F.2d at 1265. The assignment was, in substance, at least for arbitration purposes, more like the situation where a cargo owner sues the charterer and the charterer then has a claim for indemnity against the shipowner. *Id.* at 1267. Accordingly, the Court of Appeals held that there was a dispute between the charterer and shipowner and that it was subject to arbitration.

The information recently revealed, the existence of the releases, requires a reversal of the close question previously decided in Italian Lines' favor on October 6, 1983. Upon reexamination, these facts appear closer to those in *Caribbean Steamship v. Sonmez Denizcilik Ve Ticaret, A.S.*, 598

F.2d 1264 (2d Cir.1979) than in *Nissho-Iwai Co. v. M/T STOLT LION*, 617 F.2d 907 (2d Cir.1980). The 1981 releases indicate that both Italian Lines and Hermes had settled with the cargo interests and that both had been released. As assignee of the subrogees of the cargo owners, Italian Lines has no claim against Hermes with respect to bills of lading Nos. 123, 130, 131 and 132. Its only remaining claim against Hermes is for indemnification and that claim is currently in arbitration pursuant to the charterparty.

For the foregoing reasons, the third and fourth causes of action are dismissed and summary judgment will be entered dismissing the complaint. Because of this conclusion, the discovery requests of Italian Lines are denied.

The Clerk of the Court is directed to enter judgment dismissing the complaint.

IT IS SO ORDERED.